IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PENNMONT SECURITIES** And its partners Paoli, PA | : : : | |
| Plaintiff, | : : | CIVIL ACTION |
| v. | : : | No. |
| **MEYER S. FRUCHER** c/o Philadelphia Stock Exchange 1900 Market Street Philadelphia, PA | : : : : : | JURY TRIAL DEMANDED |
| **PHILADELPHIA STOCK EXCHANGE** 1900 Market Street Philadelphia, PA | : : : : | |
| **PHILADELPHIA STOCK EXCHANGE BOARD OF GOVERNORS, JOHN DOES 1-12** c/o Philadelphia Stock Exchange 1900 Market Street Philadelphia, PA | : : : : : : : | |
| **NATIONAL SECURITIES CLEARING CORPORATION** 25 Water Street New York, New York 10004 Defendants | : : : : : : | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff, PennMont Securities, through counsel, files its complaint for declaratory and injunctive relief and damages and avers as follows:

1. This is a complaint for declaratory and injunctive relief and for damages against PHLX, Meyer Frucher, CEO of PHLX, and other individuals whose identities are unknown to plaintiff at this time who participated in directing PHLX to debit a critical PennMont business

account at the National Securities Clearing Corporation ("NSCC"), for an unlawful charge for legal fees in an amount exceeding $900,000 that PHLX purports to have spent defending a shareholder type lawsuit PennMont brought against PHLX beginning in 1998.

2. This Court has subject matter jurisdiction under the Securities Exchange Act of 1934, (the "Act"), 15 U.S.C. 78a et seq. Exclusive jurisdiction over these matters is vested in this Court as a federal court: 15 U.S.C. 78aa states, in relevant part: "The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder…."

3. The authorization for the PHLX as a national stock exchange to engage in rule making is pursuant to Section 19 of the Act, 15 U.S.C.78s. PHLX Rule 651 was adopted August 5, 2004 as an effective upon filing rule, so that Rule 651 must have been enacted under Section 19(b)(3)(A) of the Act. Rule 651 expressly addresses only litigation brought by members of the PHLX. The Act does not provide any authority for the Exchange to engage in rule-making as to the rights of equity owners of the Exchange as equity owners or in matters clearly within the province of state corporate law. The legislative history of the Act expressly reveals that the intent of Congress was not to federalize state corporate law.

4. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(a)(2) and (b)(2) because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district. PHLX, NSCC and PennMont all do business in Philadelphia therefore venue in this district is proper.

5. Declaratory relief is sought pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57.

6. Plaintiff PennMont Securities, ("PennMont") is a Pennsylvania partnership with

its principal office and place of business located at 83 East Lancaster Avenue, Paoli, PA 19301. PennMont, as a firm, has been a Member of PHLX since December 19, 1981. Joseph Carapico is the general partner.

7. Defendant Meyer Frucher is a resident of New York and is an officer of PHLX, the CEO, with a place of business at 1900 Market Street, Philadelphia, PA   Mr. Frucher has been a member of the Board of Governors of PHLX since 1997 and has served as Chairman and Chief Executive Officer of PHLX since June 1998. This defendant is being sued for his individual acts while a member of the Board of Governors of PHLX and an officer of PHLX.

8. At all times relevant hereto, defendant PHLX has been, and still is, a registered securities exchange ("Exchange") under the Securities Exchange Act of 1934; 15 U.S.C. Chapter 2B (hereinafter the "Exchange Act"). Defendant PHLX as an Exchange, has been, and still is, a "self regulatory organization" ("SRO") under the Exchange Act; see, in particular, 15 U.S.C. § 78s.  Since January 21, 2004, PHLX has been a for profit Delaware corporation. PHLX is sued for injunctive relief, declaratory relief and damages and to bar PHLX from taking any actions against plaintiffs while this action is pending.

9. PHLX is governed by defendant Board of Governors, some or all of whom cooperated with defendant Frucher to cause a direction to be given to NSCC to sweep funds from PennMont's NSCC account. These are the PHLX Board of Governor John Doe defendants sued both as officials and individually.

10. Defendant National Securities Clearing Corporation is a service used by PHLX to facilitate the collection of fees from member organizations, like PennMont Securities. PennMont Securities has over $600,000 on deposit at NSCC. NSCC is sued only as a stakeholder to bar the release of any PennMont funds to PHLX.

11. On November 2, 2007, at approximately 2:45 pm, at a deposition in a case brought by PennMont for insider trading against Pasquale DiDonato, a PHLX attorney who was monitoring the deposition, Anthony Voci, handed Exhibit 1 to Joseph Carapico, general partner of PennMont. Exhibit 1 is dated November 1, 2007, purports falsely to be hand delivered on November 1, 2007, and transmitted Exhibit 2, a bill for $925,612.20 for legal fees "[p]ursuant to Rule 651."

12. Exhibit 2 is an invoice from PHLX to Penn Mont (sic) Securities and Joseph Carapico for a lump sum for "legal fees and expenses incurred by PHLX", not itemized, and was labeled due "upon presentation"

13. Exhibit 2 also had a legend printed on it "Do not Remit Payment—Clearing Account Charged at NSCC."

14. PennMont's designated clearing account at NSCC had approximately $600,000 in it as of November 2, 2007. PennMont has a relationship with Merrill-Pro, the clearing agent for this account. The NSCC clearing account is vital to PennMont's ability to trade. If $925,612.20 is withdrawn from the clearing account, it will effectively shut down PennMont's business causing irreparable harm.

15. PennMont immediately put the writer of Exhibit 1, Zahra Shahlapour, Assistant Secretary, Office of the Secretary of the Exchange, on notice that the Exchange was not to charge the account. PennMont had no confidence that such instruction would be followed and found it necessary to request Court intervention because if PHLX wrongfully debits PennMont's NSCC account it will be irreparably harmed.

16. PennMont believes that any taking by PHLX of funds from its designated NSCC clearing account is improper under Rule 651 for a number of reasons. Setting aside that Rule

651 was not properly enacted, these reasons include a) as a purported fee-shifting right when PHLX prevails in litigation with a member, the claim for fees must be brought within the relevant litigation as a counter-claim or it is waived; b) Rule 651 only applies to litigation that concerns rights of members and does not apply to rights based upon owning stock or holding equity in PHLX; and c) while Congress can enact laws that have a retroactive application, even Congress has limits and there is no basis to conclude that a delegation of a delegation of authority (from congress to the SEC to an SRO) carries with it the power to enact rules having a retroactive effect, particularly when that rule was expressly designated only to take effect upon filing. To allow PHLX to use Rule 651 as the basis to sweep funds would terminate PennMont's ability to do business and could only be intended to harm and harass.

17. Rule 651 by its express terms applies only to legal proceedings by persons who have brought a claim against the Exchange, or an Exchange related person, arising from or related to the claimant's status as a member of the Exchange whereas the litigation claims brought by PennMont are quintessential shareholder claims and the Rule is inapplicable to the claims asserted by PennMont.

18. The Rule reads: Rule 651. Exchange's Costs of Defending Legal Proceedings

Any member, member organization, foreign currency options participant, foreign currency options participant organization, or person associated with any of the foregoing who fails to prevail in a lawsuit or other legal proceeding instituted by such person or entity against the Exchange or any of its board members, officers, committee members, employees, or agents, and related to the business of the Exchange, shall pay to the Exchange all reasonable expenses, including attorneys' fees, incurred by the Exchange in the defense of such proceeding, but only in the event that such expenses exceed $50,000.00. This provision shall not apply to disciplinary actions by the Exchange, to administrative appeals of Exchange actions or in any specific instance where the Board has granted a waiver of this provision. Adopted. August 5, 2004 (04-47).

19. The claim must be one that any member can make and in particular, be a claim that a member who is not a shareholder can make, but not be a claim a shareholder who is not a

member can make. That the rule is to apply to claims of members can be seen from the last sentence of the rule stating certain instances in which the Rule does not apply. Those instances excepted from the Rule are only applicable to members and not shareholders.

20. The Rule was not properly enacted. The Rule is defective on its face as it does not provide any due process to one against whom the Exchange asserts a claim; there are no procedures provided under which one can be heard as to either the validity or the amount of the charges claimed unless it is construed that PHLX must assert its claims under Rule 651 as a counterclaim in the relevant litigation.

21. To allow defendants to apply the Rule in this case would be a wrongful application under color of the Exchange Act.

22. Rule 26 of the NSCC provides limited circumstances allowing automated debit of a "non-clearing member's" account by another "non-clearing member" (PHLX). It encompasses commission billings, dues, fees and "other charges". Debits are submitted by the 10th business day of the month for processing on the 15th business day of the month. It does not include legal claims. Legal claims are settled outside of NSCC, SRO to member, directly. Since the money amount involved in a legal claim has not been reviewed for accuracy or relevance, it is outside of the ability or purview of NSCC to pass along claims for legal fees charged by third parties.

23. The PHLX is using the Equity Commission Bill Service of NSCC wrongfully to send out this debit. PHLX has signed an Automated Clearing House ("ACH") Agreement with NSCC to accomplish the permitted bill collection as described in the preceding paragraph. To date, PHLX has not collected fines and extra commission monies from the NSCC. It appears PHLX is wrongfully using NSCC as a bill collector targeting PennMont over a disputed debt using the leverage of threatening to put PennMont out of business should its NSCC account be

overdrawn.

24. After plaintiff protested PHLX's proposed debiting of plaintiff's NSCC account, defendant Frucher informed the Court that PennMont's letter protesting the attempt to draft its NSCC account of almost a million dollars, with no prior notice, no invoices, no proof and no basis for asserting any such claim "triggered an internal hearing process in accordance with PHLX's self-regulatory function," but that no immediate action was contemplated.

25. No rules, regulations, staff, committee, procedure or anything else relating directly to Rule 651 has ever been published or disclosed to any shareholder of PHLX. This Rule has not ever, to plaintiff's knowledge, been used to bill a shareholder for legal fees. Frucher did not attach any printed material relating to the requirements for enforcement or defense of that Rule to the claim because there aren't any.

26. PHLX set an arbitrary compressed schedule during the busy end of year demanding materials to be submitted to a three member "Special Committee" consisting of PHLX Board members and set a hearing for December 19, 2007. That hearing was set for telephone appearances only. No call-in information was ever provided plaintiff.

27. Each of the members of the Special Committee had received a letter from PennMont just weeks prior questioning their vote in favor of allowing six investors who own over 89% of PHLX to block-vote their shares in direct contravention of SEC requirements. Plaintiff's position regarding the Special Committee proceeding was that the issue was the court's to decide first and presented to it the documents filed with the federal court in support of plaintiff's position.

28. PHLX essentially executed on the claim prior to its being determined by this Court or at any hearing of the Special Committee about the legitimacy of the claim and prior to

providing any evidence in support. Such a procedure clearly violates due process and is an abuse of enforcement powers. Under the Exchange rules used to calculate the net capital requirements of an entity, because PHLX assessed the sum in November, PennMont was required to list and account for that unsupported claim in their net capital calculation as if it were a legitimate claim. The effect of the $925,612.20 bill submitted by PHLX is to reduce the amount available to PennMont to conduct its business under the net capital requirements, hindering it from being able to do business to the extent it could without such a notation on its capital account.

29. Harm has already occurred to the business and reputation of PennMont.

30. PHLX also charged interest in excess of $25,000 for the month on the amount "due" prior to any determination being made about the charge and charged that interest in such a way that plaintiff also had to account for it in its net capital calculations.

31. PHLX claims it is properly acting under powers conferred upon it pursuant to the Act. Therefore when acting as a tribunal to consider violations of the Act and the rules and regulations promulgated thereunder or its own rules, PHLX is acting under color of law and is under the same obligation to obey the law and afford due process as would be received in a court action. PHLX has never filed with the SEC any rules setting forth procedures to enforce Rule 651. Because PHLX is claiming to act with delegated federal authority, and is violating due process, this additional matter separately gives this Court subject matter jurisdiction.

32. Although counsel for PHLX on December 26, 2007, represented no action will be taken to take funds from PennMont's NSCC account without 10 days notice, in fact, several actions have already been taken that have severely harmed plaintiff PennMont. Those actions are the assessment itself and the interest bill transmitted, which must be reported for net capital purposes; the transmission of bills for interest on the amount claimed, clearly indicating that

PHLX regards the matter as resolved in its favor regardless of whatever ruling this Court might make; and, a communication from an officer of PHLX with the authority to make such a representation that if PennMont does not pay the amount claimed in thirty days, PennMont will be suspended from all trading activities, essentially killing the company.

33. Although counsel reassured the Court that no action would be taken to *seize funds* without 10 days notice, on December 27, 2007 counsel sent a fax reiterating its intention to *suspend* PennMont from PHLX if payment was not received in 30 days, or by January 18, 2007. Plaintiff believes and therefore avers that PHLX' representations to the Court were empty promises narrowly drawn.

## DECLARATORY RELIEF

34. Plaintiff realleges and incorporates herein by reference each of the allegations in the preceding paragraphs of this complaint.

35. PennMont seeks declaratory resolution from this Court under 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 of the question of whether or not the Exchange has authority under the Act to proceed under Rule 651 against a shareholder who has asserted claims that are of such a nature that a shareholder who is not a member could assert those claims but a member who is not a shareholder could not merely because that shareholder is also a member of the Exchange.

36. Rule 651 on its face expressly applies only to members. This can be seen from the last sentence of the rule stating certain instances in which the Rule does not apply. Those instances excepted from the Rule are only applicable to members and not shareholders.

37. The power to make rules is pursuant to, and constrained by, the Act itself. If an appropriate basis on which to enact a rule is not present in the Act, neither the SEC, nor an SRO acting under a delegation of authority from the SEC, can enact that rule. Even if it may appear

that an SRO has the power to enact a rule, the SRO still might not have the power to enact that rule because it might be in conflict with some other law, as here where Rule 651 cannot supercede state corporate law.

38.    Congress explicitly wrote that a Rule could not be inconsistent with state law. These issues lie clearly within the subject matter jurisdiction of this Court pursuant to 15 U.S.C. 78s(b)(3)(C) which reads in relevant part:  (C) Any proposed rule change of a self-regulatory organization which has taken effect pursuant to subparagraph (A) or (B) of this paragraph may be enforced by such organization to the extent it is not inconsistent with the provisions of this chapter, the rules and regulations thereunder, and applicable Federal and State law.

39.    The Act does not provide any authority for the Exchange to engage in rule-making as to the rights of equity owners of the Exchange when they are acting as equity owners because those rights are matters of state law.  In the instant matter the intra corporate rights are set by the laws of Delaware, the state of incorporation of the Exchange.  The only areas where regulatory and police powers can be exercised by the Exchange as an SRO is the business conducted by the members of the Exchange on the floors or trading platforms of the Exchange and matters directly and immediately connected thereto.

40.    While the Act gives the Exchange authority to regulate members when they are acting as members, nothing under the Act gives the Exchange the authority to regulate a member who is a shareholder when that person is exercising rights as a shareholder.  Since the Act does not grant authority to the Exchange to regulate shareholders acting as shareholders, the attempt to assert a claim under Rule 651 against PennMont for its activities in bringing shareholder claims against the Exchange has been done without any authority to do so, and may in fact be retaliatory.

41. PennMont is entitled to be free from the lodged charges and free from being subjected to a hearing on those charges by an entity that does not have the authority to lodge the charges or hold the hearing.

WHEREFORE, plaintiff respectfully requests this Court declare Rule 651 invalid as to claims against shareholders bringing shareholder claims, to strike the fees lodged against plaintiff's NSCC account related to Rule 651 and direct no further action be taken.

## INJUNCTIVE RELIEF

42. Plaintiff realleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs of this complaint.

43. The issues that are at the core of PennMont's request for an injunction are the power of the PHLX to exercise rule making authority over a shareholder when that shareholder is exercising rights given to shareholders under state corporate law, a question of jurisdiction; and the failure of the PHLX to comply with the requirements of due process when the PHLX is acting under color of delegated authority. Both of these issues lie clearly within the subject matter jurisdiction of this Court pursuant to 15 U.S.C. 78s(b)(3)(C). In fact, exclusive jurisdiction over these matters is vested in this Court as a federal court: 15 U.S.C. 78aa states, in relevant part: "The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter *or the rules and regulations thereunder*…"(emphasis added).

44. The question is whether or not PHLX has the power to assess a claim against PennMont for legal fees and costs resulting to PHLX from shareholder claims asserted in 1998 against PHLX. PHLX claims the right to do so on the basis of Exchange Rule 651, a rule

enacted under the rule making authority of PHLX as a self-regulatory organization ("SRO") under the Securities Exchange Act, as amended, (the "Act").

45. The attempt by PHLX to assess legal fees and costs against PennMont is legally baseless. It is baseless and wrongful because it is an attempt by PHLX, Frucher and John Doe members of the Board of Governors to exercise power not given to it under the Act and PHLX has no legal basis on which it can proceed. The Act does not provide any authority for PHLX to engage in rule-making as to the rights of equity owners of PHLX when they are acting as equity owners because those rights are matters of state law. In the instant matter the intra corporate rights are set by the laws of Delaware, the state of incorporation of PHLX. The conduct is knowing and intentional.

46. PHLX has made representations to the Court that it will take no action to seize monies from plaintiff's NSCC account, however PHLX is now attempting to force plaintiffs to "appeal" the "findings" of the Special Committee to the SEC in order to avoid proceedings in this Court or suffer the sanction of being barred from trading ie putting PennMont out of business. On December 27, 2007, *one day* after making a representation to the Court that it would not seize funds from the NSCC account without notice, PHLX came up with another scheme to get around its promise to the Court, it sent a letter purportedly to "compromise" the claim asking PennMont itself to voluntarily pay money to PHLX while the SEC was "deciding" the issue and if PennMont did that, it would not be suspended from trading.

WHEREFORE, plaintiff respectfully requests that this Court enjoin defendants from taking any further action against plaintiff pursuant to Rule 651, enjoin the hearing process which was tainted from the beginning and to void any and all actions already taken regaining the status quo prior to any actions taken with regard to PennMont's account, including voiding the notation

of the debt so it does not have to be factored into the net capital calculation.

## INTENTIONALLY WRONGFUL CONDUCT

47.     Plaintiff realleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint.

48.     Defendants assert damage claims for tort and Bivens-type injuries.

49.     Defendants owed a duty to plaintiff to use ordinary care to prevent plaintiff from being injured as a result of defendants' conduct.

50.     Defendants breached that duty by their knowing and willful actions and omissions, including but not limited to their conduct as set forth above and their violations of the law and due process.

51.     Plaintiff was injured and suffered damages as a result of the wrongful conduct including paying legal expenses to defend against defendants' acts which expenses would have been unnecessary but for the acts of defendants.

52.     The results of these wrongful actions and omissions were or should have been foreseeable to the defendants.  Defendants were aware of the breaches of duty of the other defendants and participated in those breaches of duty.

53.     As a result and because defendants acted wrongfully, maliciously and in callous disregard of the rights and interests of plaintiff, plaintiff is entitled to damages as set forth herein.

WHEREFORE, plaintiff respectfully requests relief and judgment in favor of itself for in excess of $200,000 and against defendants jointly and severally as for actual, compensatory and consequential damages according to proof; for punitive or exemplary damages against defendants jointly and severally, in an amount sufficient to punish defendants and deter others from similar wrongdoing; for attorneys fees and expert fees; for prejudgment interest; for costs

of suit and for such other, different or further relief as the interests of justice or equity may require.

                                                Respectfully submitted,

                                                _____
                                                Lynanne B. Wescott, Esquire
                                                Identification No. 52928
                                                239 S. Camac Street
                                                Philadelphia, PA 19107
                                                Tel: (215) 545-0324
                                                Fax: (215) 545-0326

                                                Attorney for Plaintiff

Dated: December 31, 2007