IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PENN MONT SECURITIES | : | |
| and its partners, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
|     v. | : | NO. 07-CV-5543 |
| | : | |
| MEYER S. FRUCHER, | : | |
| the PHILADELPHIA STOCK | : | |
| EXCHANGE, | : | |
| the PHILADELPHIA STOCK | : | |
| EXCHANGE BOARD OF GOVERNORS, | : | |
| and the NATIONAL SECURITIES | : | |
| CLEARING CORPORATION, | : | |
|     Defendants. | : | |

**EXPLANATION AND ORDER**

**I.**     **Background**

The Philadelphia Stock Exchange ("PHLX" or the "exchange") is the oldest national securities exchange in the United States. At least as early as 1998, PHLX was negotiating a sale of its assets to another securities exchange, the American Stock Exchange ("AMEX"). This transaction would have generated approximately $100 million for PHLX and its directors and would have divested PHLX members of certain governance and equity trading privileges.  PennMont Securities ("PennMont") is a member of PHLX, and was a member of PHLX at the time of the AMEX negotiations. It sued PHLX in state court in November 1998 seeking to enjoin the sale on the grounds that it would drastically de-value its ownership stake in the exchange.

While the 1998 suit was pending, the sale to AMEX fell through. But, undaunted, in 2003 PHLX began to pursue another method of altering its corporate structure. It announced its intention

1

to "demutualize": to convert from a non-stock corporation --- with ownership interests measured by seats on the exchange --- to a stock corporation --- with ownership interests measured by shares, as in a traditional publicly-held company. Like the aborted asset sale, demutualization had the potential to dramatically reduce PennMont's ownership stake in the exchange. In September 2003, PennMont amended its state court complaint to challenge the proposed demutualization.

In August 2004, after the suit was commenced but before summary judgment was ultimately entered for PHLX, the exchange enacted Rule 651. The rule reads:

> Any member, member organization, foreign currency options participant, foreign currency options participant organization, or person associated with any of the foregoing who fails to prevail in a lawsuit or other legal proceeding instituted by such person or entity against [PHLX] or any of its board members, officers, committee members, employees, or agents, and related to the business of [PHLX], shall pay to [PHLX] all reasonable expenses, including attorneys' fees, incurred by [PHLX] in the defense of such proceeding, but only in the event that such expenses exceed $50,000. This provision shall not apply to disciplinary actions by [PHLX], to administrative appeals of [PHLX] actions or in any specific instance where the Board has granted a waiver of this provision.

Defs.' Resp. (Doc. # 5) Ex. C.

In September 2004, the Pennsylvania Court of Common Pleas granted summary judgment for PHLX in the state court action. The Superior Court affirmed in 2006. PHLX allegedly incurred legal fees of almost $1 million defending the case for that eight-year period. In November 2007, PHLX invoked Rule 651 and sent PennMont an invoice for these costs. In other words, PHLX was sued in 1998, and six years later it enacted a rule it would eventually try to use to recover the costs of defending the pre-rule suit.[1]

---

[1] It should be noted that, after the rule became effective, the Securities and Exchange Commission ("SEC" or "Commission") received a comment addressing the retroactivity issue and declined to exercise its plenary power to amend or abrogate the rule. Defs.' Resp. (Doc. # 5) Ex. B.

PennMont objected to the invoice. That objection triggered an internal review by PHLX's three-member Special Committee to Review Delinquencies and Payments ("Special Committee"). The Special Committee --- one member of which was a named defendant in the 1998 state court action --- held a hearing in December 2007 and concluded that PHLX was entitled to collect legal fees from PennMont.

On New Year's Eve 2007, PennMont filed a complaint in this Court and moved for a temporary restraining order and preliminary injunction to prevent PHLX from enforcing its fee-shifting rule. The complaint alleges that the rule was not properly enacted, does not apply retroactively, and fails to provide a meaningful opportunity for an unsuccessful member-litigant to contest the amount billed.

At a chambers conference held to discuss the motion for a temporary restraining order and preliminary injunction in January 2008, PHLX agreed not to debit any funds until further order of this Court.

**II.     Legal analysis**

PennMont's challenge implicates PHLX's powers as a self-regulatory organization ("SRO") under the Securities and Exchange Act of 1934 ("Exchange Act") and therefore requires this Court to construe federal law, ostensibly giving rise to federal-question jurisdiction pursuant to 18 U.S.C. § 1331. PHLX argues that jurisdiction lies solely with the SEC and not with this Court. Defs.' Resp. (Doc. # 5) 16-18. I assume --- without deciding --- that jurisdiction is proper and proceed to examine the underlying legal issue.

PHLX is registered with the SEC as a "national securities exchange," making it an SRO within the meaning of the Exchange Act. Kaplan v. First Options, 19 F.3d 1503, 1516 (3d Cir. 1994); 15 U.S.C. §§ 78f, 78c(a)(26). The SEC delegates to SROs the regulatory authority to make and apply internal rules and oversee trading. § 78f(b). An SRO acts pursuant to this authority only when it takes action consistent with the goals of the Exchange Act. § 78f(b). Further, as an SRO, PHLX is absolutely immune from private civil suits complaining of actions taken pursuant to that regulatory authority. In re Olick, 99-5128, 2000 WL 354191, *4 (E.D. Pa. April 4, 2000), aff'd 235 F.3d 37 (table) (3d Cir. 2001); CalPERS v. NYSE, 503 F.3d 89, 98 (2d Cir. 2007); Sparta Surgical Corp. v. NASD, 159 F.3d 1209, 1215 (9th Cir. 1998). The issue, then, is whether PHLX's attempt to enforce Rule 651 constitutes action taken pursuant to its regulatory authority. Put another way, the issue is whether PHLX's attempt to enforce Rule 651 is consistent with the purposes of the Exchange Act.

One enumerated goal of the Exchange Act is for an SRO "to provide for the equitable allocation of reasonable dues, fees, and other charges among [the SRO's] members and issuers and other persons using [the SRO's] facilities." § 78f(b)(4). The SEC — the agency charged with enforcing the Exchange Act — has found time and again that fee-shifting provisions substantively identical to Rule 651 further this statutory goal. See, e.g., SEC Rel. No. 34-37653, 1996 WL 466637, *3-*4 (1996) (Pacific Stock Exchange rule); SEC Rel. No. 34-37421, 1996 WL 390709, *3-*4 (1996) (Chicago Board Options Exchange rule); SEC Rel. No. 34-34780, 1994 WL 559143, *3 (1994) (Midwest Clearing Corp. rule); SEC Rel. No. 34-34505, 1994 WL 440909, *5 (1994) (Chicago Stock Exchange rule). The SEC declared Rule 651 "effective upon filing" on August 5, 2004, so it never had the occasion to issue a formal approval order as it did for the analogous rules

of the Pacific Stock Exchange, Chicago Board Options Exchange, Midwest Clearing Corporation, and Chicago Stock Exchange. SEC Rel. No. 34-50159, 2004 WL 2049378, *2-*3 (2004). But, since that time, the Commission has not sought to amend or abrogate the Rule on the grounds that it is inconsistent with the Exchange Act. Because the SEC has plenary power to do just that, this lack of action suggests that Rule 651 furthers the Exchange Act's purposes. § 78s(c) (flush language).

A national exchange uses membership dues payments to operate its day-to-day business and also to fund its litigation costs. Financially, a member's suit has the potential to benefit only the suing member. But, the costs incurred by the exchange in defending the suit necessarily come from the sum total of the dues paid by all members. Rules like Rule 651 help eliminate this externality by providing that a member who unsuccessfully sues the exchange will bear the exchange's legal costs under certain circumstances. This allows membership dues (that would otherwise be used to defend the suit) to be used instead for exchange-wide activities that benefit all members.

The SEC, using its extensive and broad-based experience as the chief agency in charge of securities regulation, has determined that this method of allocation is "equitable" within the meaning of Exchange Act where (1) unsuccessful member litigants only pay the exchange's legal costs if they exceed $50,000, and (2) fee-shifting does not apply to internal exchange disciplinary proceedings. 1996 WL 466637 at *3-*4; 1996 WL 390709 at *3-*4; 1994 WL 559143 at *3; 1994 WL 440909 at *5. PHLX Rule 651 by its terms incorporates both of these criteria. Therefore, its enforcement is consistent with the Exchange Act.

PennMont repeatedly accuses PHLX of acting maliciously and deviously in seeking to enforce Rule 651. See, e.g., Pl.'s Mot. (Doc. # 2) 1. But PHLX's alleged bad faith is not relevant to determining whether its actions fell within the scope of its delegated regulatory authority. See, e.g.,

5

CalPERS, 503 F.3d at 98 n.3. Further, PennMont's allegations that Rule 651 was improperly enacted also do not bear upon whether enforcing that rule constitutes an exercise of regulatory power. Indeed, courts have held that whether a rule violates the U.S. Constitution --- much less whether it violates the rulemaking procedures of the SEC --- is not relevant to determining whether enforcement of those rules furthers the purposes of the Exchange Act. Scher v. NASD, 218 Fed. Appx. 46, 46 (2d Cir. 2007) (NASD's application of internal investigation rule that allegedly violates Fifth Amendment Due Process Clause because it does not require investigator to inform suspect that suspect's answers to questions may be used in subsequent criminal prosecution).

Because PHLX's application of Rule 651 to its member PennMont is consistent with the goals of the Exchange Act, it constitutes action taken pursuant to the scope of PHLX's regulatory authority. More generally, every court to confront the issue has held that an SRO's decision to apply (or decline to apply) an internal rule governing the conduct of its members constitutes an exercise of delegated regulatory power and therefore cannot serve as the basis for a private civil suit in a district court. See, e.g., CalPERS, 503 F.3d at 99-100 (NYSE's failure to apply its rules punishing member firms for trading using non-public information); Scher, 218 Fed. Appx. at 46; DL Capital v. NASDAQ, 409 F.3d 93, 99-100 (2d Cir. 2005); (NASDAQ's application of rules providing for cancellation of certain improperly executed trades); MFS Secs. Corp. v. NYSE, 277 F.3d 613, 617 (2d Cir. 2002) (NYSE's application of rules punishing stock flipping); D'Alessio v. NYSE, 258 F.3d 93, 106 (2d Cir. 2001) (same); Barbara v. NYSE, 99 F.3d 49, 51, 58-59 (2d Cir. 1996) (NYSE's application of rule barring clerk from trading floor pending outcome of internal disciplinary proceeding); Sparta Surgical, 159 F.3d at 1215 (NASD's application of rule suspending trading of

certain stock offerings). Therefore, PHLX is absolutely immune from PennMont's claim, because it is premised upon this regulatory conduct.

This Explanation and Order does not leave PennMont remediless. Indeed, PHLX concedes that PennMont may review the Special Committee's decision to uphold the fee-shifting to the SEC. If PennMont is not satisfied with the SEC's disposition, it can seek relief in the Court of Appeals. Defs.' Resp. (Doc. # 5) 17. But, to obtain a preliminary injunction, PennMont must show, among other factors, that it is likely to succeed on the merits of its claim. Nutrasweet v. Vit-Mar Ents., 176 F.3d 151, 153 (3d Cir. 1999). The doctrine of absolute regulatory immunity therefore compels me to deny PennMont's motion because it cannot demonstrate this likelihood.

Also, because absolute immunity bars PennMont from obtaining any relief in this Court, I will dismiss PennMont's complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Bryson v. Brand Insulations, 621 F.2d 556, 559 (3d Cir. 1980) (approving district court's sua sponte Rule 12(b)(6) dismissal).

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PENN MONT SECURITIES              :
and its partners,                 :
      Plaintiff,              :       CIVIL ACTION
                                  :
      v.                      :       NO. 07-CV-5543
                                  :
MEYER S. FRUCHER,                 :
the PHILADELPHIA STOCK            :
EXCHANGE,                         :
the PHILADELPHIA STOCK            :
EXCHANGE BOARD OF GOVERNORS,      :
and the NATIONAL SECURITIES       :
CLEARING CORPORATION,             :
      Defendants.             :

# ORDER

**AND NOW**, on this __12th____ day of February 2008, it is **ORDERED** that PennMont's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. # 2) is **DENIED**. It is further **ORDERED** that the above-captioned case is **DISMISSED** for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

                                                  s/Anita B. Brody
                                            _____
                                            ANITA B. BRODY, J.

**Copies VIA ECF on _____ to _____**           **Copies MAILED on _____ to _____**